704

**" Sarah Lebolt ", Petitioner, _v._ " Bernard Lebolt ",
Respondent.***

Domestic Relations Court of the City of New York, Family Court,
New York County, July 13, 1951.

*Anthony G. Zingales* for petitioner.

*Harry Mandell* and *Philip Silverman* for respondent.

Sicher, J.    There is presented a jurisdictional question whether this proceeding falls within the ambit of the statutory provision that " A separation agreement shall in no way preclude the filing of a petition for the support  *  *  *  of a wife who is likely to become a public charge " (N. Y. City Dom. Rel. Ct. Act, § 137, subd. 5).

On April 15, 1950, the parties, who had intermarried on July 26, 1924, entered into a formal written separation agreement, in conventional form, by which the husband agreed to pay to the wife " in full of his obligation for her care, support and

---

* The opinion as filed sets forth the true names of all parties but as here published substitutes fictitious names and disguises certain other details, in consonance with the spirit of section 52 of the Domestic Relations Court Act of the City of New York (L. 1933, ch. 482).

maintenance, the sum of Twenty ($20.00) Dollars per week'' and which further stipulated that '' all payments provided to be made under this agreement for the support and maintenance of the wife shall be made by the husband and are accepted by the wife as and for a satisfactory, reasonable and sufficient provision for her support and maintenance ''.

Concededly, respondent has duly performed such agreement.

It is well established that when the husband is not in default thereunder a separation agreement must be considered in full force and effect and bars the wife from an increase of the stipulated amount despite improvement of the husband's financial circumstances (*Schmelzel* v. *Schmelzel,* 287 N. Y. 21), unless such amount is inadequate to prevent the wife from becoming a public charge (see *Kyff* v. *Kyff,* 286 N. Y. 71; cf. *'' Jenkins ''* v. *'' Jenkins '',* 179 Misc. 905). '' Such agreements, lawful when made, will be enforced like other agreements unless impeached or challenged for some cause recognized by law. It is not in the power of either party acting alone and against the will of the other to destroy or change the agreement.'' (*Goldman* v. *Goldman,* 282 N. Y. 296, 300. See, also, *Solemene* v. *Solemene,* 229 App. Div. 728; *Powers* v. *Powers,* 33 App. Div. 126; *Smith* v. *Smith,* 39 N. Y. S. 2d 330, and *Sinno* v. *Sinno,* 174 Misc. 869.)

That fundamental doctrine of the law of contracts cuts both ways. On the one hand, it shuts the wife off from participation in any improvement of the husband's financial circumstances; on the other hand, a diminution of his resources constitutes no legal excuse for nonperformance.

However, there is also another relevant common-law principle, likewise well established, that until the marriage relationship will have been terminated by judgment of divorce, annulment or dissolution, *as between the community and the husband* the burden of the wife's support is cast upon the husband, regardless of any fault of either spouse (*People* v. *Schlenkel,* 258 N. Y. 224; *People* v. *McCarthy,* 257 N. Y. 567, affg. 139 Misc. 746; *Anonymous* v. *Anonymous,* 20 N. Y. S. 2d 514).

The above-quoted provision of subdivision 5 of section 137 of the Domestic Relations Court Act of the City of New York is a statutory declaration of that common-law obligation of a husband to exonerate or indemnify the community from the burden of his wife's support. It is analogous to the statutory obligation of an adult child for the support of an indigent parent (Dom. Rel. Ct. Act, § 101, subd. 4), which is likewise grounded on the historical concept of '' protection of the public purse ''

(see *Anonymous* v. *Anonymous*, 176 Misc. 103, 105; *Anonymous* v. *Anonymous*, 173 Misc. 244; "*Mendelsohn*" v. "*Mendelsohn*", 192 Misc. 1014; and *Neuerstein* v. *Newburger*, 53 N. Y. S. 2d 906). So, subdivision 5 of section 137 of the Domestic Relations Court Act of the City of New York supplements the statutory powers conferred in section 92 of the Domestic Relations Court Act of the City of New York with specific jurisdiction to enter an order for support of a wife in an amount exceeding that stipulated in a separation agreement which is being duly performed but which nevertheless provides a sum inadequate to exonerate or indemnify the community fully (see "*Jenkins*" v. "*Jenkins*", 179 Misc. 905, 907, *supra*).

However, the undisputed testimony of a duly qualified representative of the department of welfare of the City of New York proved that respondent's payments of $20 each week (the equivalent of $86.66 a month) exceed the amount of the home relief budget ($76.90 a month) which would be allowed to petitioner if without such, or other, income, and that an application by her to the department of welfare of the City of New York for financial assistance would therefore be rejected. It follows that the instant proceeding lacks the essential jurisdictional requirement that petitioner is at this time likely to become a public charge (cf. *Anonymous* v. *Anonymous*, 176 Misc. 103, supra).

It is earnestly argued that the petitioner is nevertheless " likely to become a public charge " because the aforementioned $76.90 monthly budget figure does not include the additional allowance for special diet, drugs and free medical care which *might* be granted to petitioner *if* and *after* she had become an eligible recipient of the department of welfare of the City of New York aid, and that her current outlays, including a " special diet ", drugs and private medical care, now aggregate more than $20 a week, the excess being defrayed out of her rapidly dwindling bank account. But the evidence showed that the cost of her so-called " special diet " has been no more than for an ordinary diet and, also, that, in the opinion of Dr. Henig, director of the medical division of this court, petitioner is physically able to do light work. Moreover, as I had occasion to hold in the analogous case of a mother who had petitioned for an order requiring a son to supplement her annual trust income of $1,100, " the test of the likelihood of a person's becoming a public charge is not that individual's special demands, but rather what constitutes the norm for eligibility for old age assistance or other public aid." (*Anonymous* v. *Anonymous*, 176 Misc. 103, 108, *supra*.)

Finally, petitioner's counsel's citation of Judge CURTIS BOK's eloquent caveat—"It is not enough to send men and women away from court with a decision; there must also be a sense that there is wisdom in it, and a blessing upon it, and a touch of kindly magic to go with it." ("I Too, Nicodemus", p. 325) — invites the dictum that it is at least arguable that petitioner's welfare may be better served by her clinging to the fixed contract obligation of respondent rather than substituting for it the hazards of a Family Court support proceeding. Even though there be a decrease or stoppage of the earnings petitioner had when the separation agreement was consummated in her behalf on April 15, 1950, a support proceeding in this court would have to take into account also the asserted, if proved, change in respondent's circumstances that he is no longer gainfully employed but now maintaining himself wholly on the proceeds of the recent sale of the shop he had owned and operated on April 15, 1950. Unfortunately, this court is daily constrained to enter inadequate orders because there must be taken into account not only the needs of the dependent but also the inability of the person chargeable with support to contribute an adequate amount (see *Domb* v. *Domb,* 176 Misc. 409 [PANKEN, J.]). The net proceeds of such sale are available to respondent for performance of the separation agreement, and would be subject to execution on a judgment for breach of that contract; contrariwise, in *City of New York (Sullivan)* v. *Sullivan* (246 App. Div. 55), the Appellate Division, first department, reversed a support order predicated solely on a $5,000 cash legacy and ruled that the Family Court "in making an award should take into consideration not only the fact that the appellant is about to receive a legacy but should consider, in addition thereto, his advanced years, and the amount of money he may need for his support when he is no longer able to receive anything for his labors." (Pp. 56-57.)

For the foregoing reasons the petition is dismissed, without prejudice, however, to whatever rights either party may have in any other court in respect of such separation agreement or the marital status, and also with leave to file a new petition in this court when and if the requisite jurisdictional facts hereafter occur. But no new petition shall be filed except with the consent of the Justice then sitting in the Part where the new proceeding would be heard.

Notice shall be given pursuant to the subjoined direction.